IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND WHITEHEAD, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 1:04-1236-T |
| | ) | |
| JO ANNE B. BARNHART, the | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

ORDER GRANTING MOTION FOR APPROVAL OF FEE PURSUANT TO 42 U.S.C.
§ 406(b)

Raymond Whitehead (the "Claimant"), through his attorney, Roger Stanfield, moves for judicial approval of an attorney's fee totaling $26,799.00, based on Mr. Stanfield's successful representation of the Claimant in the latter's claim for disability insurance benefits under Title II of the Social Security Act. The Commissioner of Social Security submits that awarding the fee will result in a windfall to Mr. Stanfield because the fee translates into an hourly rate that far exceeds the attorney's hourly rate in non-social security cases. Having conducted its independent review, the court is persuaded that the fee is reasonable under the circumstances and should be approved. Accordingly, the court GRANTS the motion for approval of the fee.

I.

Claimant filed an application for Title II benefits in 1999, seeking benefits from 1998. This application was denied repeatedly until, in August of 2001, the Social Security Appeals Council ordered a second hearing before the administrative law judge ("ALJ"). While the first application was pending before the Appeals Council, and before the rehearing on that application, Claimant filed a second application for benefits. The second application also failed at the lower levels of administrative review. When Claimant requested that an ALJ review the second application, the agency combined that application with the one on administrative remand and ordered an omnibus hearing that occurred on August 22, 2002. On October 24, 2002, the ALJ issued a ruling deciding that Claimant was not disabled. The ALJ's ruling became final when the Appeals Council summarily denied discretionary review on September 10, 2004. Claimant then sought judicial review in this court. On February 28, 2005—approximately five and one-half years after Claimant filed his first application—the Commissioner conceded that Claimant was disabled and consented to an order remanding the case for an administrative award of benefits. The court issued the consent order and entered judgment on March 4, 2005. On remand, the Commissioner eventually determined that, as of the date of the court's judgment, Claimant was entitled to past-due Title II benefits totaling $116,963.20.

Mr. Stanfield, who is an experienced advocate with twenty-five years invested in representing numerous social security disability claimants, began representing Claimant at the agency level in 2000. At that time, Claimant signed a standard agreement setting an attorney's fee conditional upon the ultimate success of the claim; as in most social security

cases, the fee was fixed at twenty-five percent (25%) of the past-due benefits to which Claimant would be entitled upon a finding of disability. If Claimant was found not to suffer from a disability, and thus not entitled to any past-due benefits, Mr. Stanfield's fee would equal zero under the plain terms of the standard agreement.

The risk of nonpayment of an attorney's fee was not illusory. In 2000, when Mr. Stanfield's representation of Claimant began, the end result (which we now know) that Claimant's limitations would be proved to satisfy the relevant legal definition of "disability" (despite several administrative findings to the contrary) certainly was not an outcome to be taken for granted. Although Claimant was a husband and a father and had been employed successfully almost his entire adult life, Mr. Stanfield, before the agency and before this court, took the not-so-obvious position that Claimant was mentally retarded under the Commissioner's listing of conclusively disabling impairments. Convincing the Commissioner of the legal and factual soundness of this position was no easy task, but depended in large part on the quality of Mr. Stanfield's advocacy.

After this court remanded, moreover, Mr. Stanfield's continued presence resulted in the discovery of an innocent, but substantial initial under-calculation of past-due benefits by the Commissioner. In the first notice of award, the Commissioner did not account for the monthly spousal and child benefits to which Claimant was legally entitled, resulting in an under-calculation of $41,110.00 (*i.e.*, $75,853.20, instead of $116,963.20 in past-due benefits owed as of the date of court judgment). Had Mr. Stanfield not raised the deficiency, it is not unlikely that this sizeable underpayment would have been forgotten permanently.

Claimant, recognizing Mr. Stanfield's essential contribution to the favorable outcome of the claim, adamantly opposes any judicial reduction of the fee yielded by the contingency-fee formula.  Acting in her role as the "trustee," *see Gisbrecht v. Barnhart*, 535 U.S. 789, 798 n.6 (2002), however, the Commissioner takes the view that awarding the requested fee in whole will serve neither the best interests of Claimant nor the underlying purposes of the social security disability insurance system.  In so asserting, the Commissioner does not suggest that Mr. Stanfield is chargeable with overreaching, delay, substandard representation, or any other conduct or omission that makes him particularly undeserving of the full fee. What the Commissioner does assert is that twenty-five percent (25%) of the "inordinately large" award of past-due benefits, *i.e.* $26,799.00, when multiplied by the number of hours Mr. Stanfield devoted to the case at the federal court level, or 27.3 hours, produces an effective rate of approximately $982.00 per hour expended, and that the $982.00 hourly rate is simply an unreasonable windfall when compared to Mr. Stanfield's hourly rate of $150.00 in some of his other, non-Title II cases.

## II.

The Commissioner has withheld all of Claimant's past-due benefits, including the fee, pending the court's review of Mr. Stanfield's request for approval.  In determining whether or not to grant the request, the court begins with 42 U.S.C. § 406(b)(1)(A), which provides that, "[W]henever a court renders a judgment favorable to a claimant under [Title II] who was represented before the court by an attorney, the court may determine and allow . . . a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due

4

benefits to which the claimant is entitled by reason of such judgment." *Id.* (emphases added). The plain language of the statutory provision undeniably contemplates an important oversight duty for the courts. *See Gisbrecht*, 535 U.S. at 804 (noting Congress' concern in 1965 that some lawyers had charged low-income benefits applicants as much as one-half of past-due benefits). But in determining what is a "reasonable fee . . . not exceeding 25 percent," the court surely should not ignore the fact that contingent-fee agreements always have been the "primary means by which fees are set for successfully representing Social Security benefits claimants in court." *Id.* at 804, 807. And while those agreements are "hardly flawless," *id.* at 806, especially when shielded from review, *id.* at 803, not even the Commissioner of Social Security has been able to "identify [a] more effective means of ensuring claimant access to [skilled] attorney representation" than the typical contingent-fee arrangement, *id.* at 806. So courts should exercise caution before tampering with a "high" fee based on after-the-fact judgments and comparisons that do not take account of the realities of the relevant market and the actors within.

Such an approach to the duty of independent review does not mean the courts must engage in a fictional "presumption" that all fees produced by standard contingent-fee agreements are reasonable unless the Commissioner establishes to the contrary. Indeed, by permitting the court to "allow" a reasonable fee not above twenty-five percent, it seems the more plausible view is that Congress intended to impose the ultimate burden of persuasion on the successful claimant's attorney to show the reasonableness of the requested fee in light of the services rendered, and *Gisbrecht* permits no other conclusion. *See id.* at 807, 807 n.17;

5

*see also Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989) ("[W]e emphasize that [the agreement] is not to be viewed as *per se* reasonable."). Whether the burden is or is not satisfied in a given case, however, must in some respects be viewed in light of the "primacy" accorded to the percentage set by the contingent-fee agreement itself. *Gisbrecht*, 535 U.S. at 793 (interpreting 42 U.S.C. § 406(b) to preserve the primacy of the contingent-fee agreement); *Rodriquez*, 865 F.2d at 746 (using the contractual contingent-fee as a "benchmark" for analysis).

If consistent with "the character of the representation and the results the representative achieved," the contingent-fee should not be disturbed. *Gisbrecht*, 535 U.S. at 808. The court must be confident that the representation was not "substandard," *id.* (citing *Lewis v. Sec'y of Health & Hum. Servs.*, 707 F.2d 246, 249–250 (6th Cir. 1983)); that the attorney did not contribute to the accumulation of past-due benefits by delaying resolution, *id.* (citing *Rodriquez*, 865 F.2d at 746–747); and that approving the fee will not result in a "windfall" to the attorney, *id.* (citing *Rodriquez*, 865 F.2d at 747 and *Wells v. Sullivan*, 907 F.2d 367, 372 (2d Cir. 1990)). The court is persuaded that the quality of Mr. Stanfield's representation of Claimant, and the results thereby achieved for Claimant, were exceptional. *See supra*, at 2–4. Moreover, Mr. Stanfield has shown that he bears no responsibility for the fact that Claimant's claim remained pending nearly seven years before its resolution. *See* Cl.'s Mem. Supp. Mot. for Award of Fees at 6; Stanfield Aff. at 4, ¶ 6. The only issue in this case is whether approving the requested fee will result in a windfall simply because the fee translates into an effective hourly rate that is substantially larger than Mr. Stanfield's hourly rate in other types

of cases.

This court, like many other federal courts following *Gisbrecht*, has been unwilling to interpret the windfall rule to permit reduction based solely on a quantitative comparison between the hourly rate represented by the contingent-fee and the attorney's typical hourly rate in non-social security cases. *See, e.g., Droke v. Barnhart*, No. 02-1284, 2005 U.S. Dist. LEXIS 27244, at *4 (W.D. Tenn. Sept. 6, 2005) (unpublished order) (citing *Mudd v. Barnhart*, 418 F.3d 424 (4th Cir. 2005); *Yarnevic v. Apfel*, 359 F. Supp. 2d 1363, 1365 (N.D. Ga. 2005); *Claypool v. Barnhart*, 294 F. Supp. 2d 829, 833–834 (S.D. W. Va. 2003); *Brown v. Barnhart*, 270 F. Supp. 2d 769, 772–773 (W.D. Va. 2003)). Although there is language in *Gisbrecht* that, if read literally, suggests courts should attempt to erect a numerical ceiling on the permissible disparity, *see Gisbrecht*, 535 U.S. at 808 (suggesting courts should reduce fees when "benefits are large in comparison to the amount of time counsel spent") (citing *Rodriquez v. Bowen*, 865 F.2d 739, 747 (6th Cir. 1989)), it seems impossible that the Court's actual holding somehow mandated an approach to the windfall issue that would invalidate a fee simply because the fee is "large in comparison[,]" *id.* at 792–793 (rejecting "lodestar" methods); *see also id.* at 808 (permitting district courts to require, "*not as a basis for satellite litigation, but as an aid to the court's assessment of . . . reasonableness . . .*, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for non-contingent fee cases") (emphases added). More than comparative "largeness," then, must be shown before this court will reduce a fee on the theory that it constitutes a "windfall" to counsel. *See Droke*, 2005 U.S. Dist. LEXIS 27244, at *4 ("While the effective

hourly rate of the requested fee in this case is several times larger than counsel's rate of $150.00 for non[-]contingent-fee matters, the Court finds that it is not unreasonable.").

III.

The materials Mr. Stanfield submitted with the motion for approval candidly acknowledge the "largeness" of this particular fee in comparison to his effective hourly rate of $150.00 in the "three or four" divorce cases that he typically handles at a given time. Stanfield Aff. at 5. He spent just over twenty-seven billable hours working on Claimant's case at the judicial level; that many hours multiplied by his $26,799.00 fee produces an effective hourly rate of $982.00. He nevertheless seeks to justify the comparatively higher rate because of: his expertise in social security cases, his diligence both during the pendency of the claim and after the initial under-calculation of benefits, the factual and legal difficulty of establishing the applicability of Listing 12.05(C)'s definition of mentally retarded to this Claimant, his lack of responsibility for the accumulation of past-due benefits, and the real risk of non-payment that he assumed when he agreed to represent Claimant.[1] The Commissioner's only response is that the difference between $150.00 per hour and $982.00 per hour is simply an unreasonable difference that must be reduced to avoid a windfall. The court does not agree with the Commissioner's narrow approach.

---

[1] As Mr. Stanfield is well aware, the risk of nonpayment of a fee can and does often materialize in social security appeals. *E.g. Martinez v. Barnhart*, No. 05-1112, order affirming final decision of the Commissioner at 26–27 (W.D. Tenn. Feb. 19, 2006). The scope of judicial review of the Commissioner's decision in such cases is highly deferential. *E.g., Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (1992) (explaining substantial evidence standard). Thus, the Commissioner's decisions can be affirmed, and the attorney paid nothing, even if the attorney meets the highest expectations of diligence and persuasiveness. This reality of the legal practice in which Mr. Stanfield is engaged causes the court to pause before casually labeling his fee an "exorbitant windfall."

A true "windfall" in this context, as the court's previous discussion suggests, must mean more than that the attorney happened to end up working substantially fewer hours to obtain the contingent-fee than he would have been required to expend to earn the same fee based on an hourly rate. In *Gisbrecht*, the eight-member majority did not define precisely its conception of a windfall fee, *see Gisbrecht*, 535 U.S. at 808 (suggesting the district courts should have wide latitude in deciding that question), but Justice Scalia's dissent gave by way of example the case where, *at the time the contingent-fee agreement was signed*, "the chances of success . . . [were] so high, and the anticipated legal work so negligible, that the percentage of the recovery *assured* to the lawyer [was] exorbitant[,]" *id.* at 810 (SCALIA, J., dissenting) (emphases added). Pre-*Gisbrecht* cases from the Sixth Circuit[2] similarly confirm that the Commissioner's single-faceted approach to the question is mistaken. For example, in *Rodriquez v. Bowen*, 865 F.2d 739, 747 (6th Cir. 1989), the court of appeals suggested that one important factor was whether the case was a case "submitted on boilerplate pleadings, in which no issues of material fact [were] present and where no legal research [was] apparent[.]" *Id.* In *Royzer v. Sec'y of Health & Hum. Servs.*, 900 F.2d 981, 982 (6th Cir. 1990), the court

---

[2]Although the court disagrees with the Commissioner's characterization of those cases, the court does not accept Mr. Stanfield's suggestion that *Gisbrecht* caused a dramatic change in his favor with respect to Sixth Circuit law on contingent-fee agreements in social security disability appeals. *See* Cl.'s Reply at 2 (suggesting *Gisbrecht* "mooted" previous Sixth Circuit cases); *but see Gisbrecht*, 535 U.S. at 799, 808 (*approving* the approach to contingent-fee agreements reflected by the Second, *Sixth*, and Seventh Circuits). For the most part, *Gisbrecht* left the law of the Sixth Circuit intact, which was already favorable to contingent-fee agreements in general. And to the extent *Gisbrecht* has changed Sixth Circuit law, the change called for more, not less, court review of contingent-fees. *Compare, e.g., Hayes v. Sec'y of Health & Hum. Servs.*, 923 F.2d 418, 419 (6th Cir. 1990) (describing this circuit's application of a "rebuttable presumption" to such agreements) *with Gisbrecht*, 535 U.S. at 807, 807 n.17 (interpreting 42 U.S.C. § 406(b) not to permit a "presumption").

In short, the cases from this circuit, even though they preceded *Gisbrecht*, are still highly useful in determining whether Mr. Stanfield's fee is reasonable under 42 U.S.C. § 406(b).

of appeals clearly cautioned against isolated focus on the effective hourly rate, instructing lower courts to consider also the risk of nonpayment,

> . . . We tend to agree with the trial judge that, viewed as an hourly rate billing, this is on the high side; however, this is not an hourly rate billing. It is not at all unusual for contingent fees to translate into large hourly rates . . . . [But] [i]n assessing the reasonableness of a contingent fee award, we cannot ignore the fact that the attorney will not prevail every time. The hourly rate in the next contingent fee case will be zero, unless benefits are awarded. Contingent fees generally overcompensate in some cases and undercompensate in others. It is the nature of the beast.

*Id.* In *Puryear v. Sullivan*, No. 89-1860, 1990 U.S. App. LEXIS 7411, at *4 (6th Cir. May 7, 1990), the court restated its intent to avoid "automatically . . . equat[ing] 'large benefits awards' and 'windfalls[.]'" *Id.* (unpublished per curiam opinion). And in *Damron v. Comm'r of Soc. Sec.*, 104 F.3d 853, 856–857 (6th Cir. 1997), the appellate court reemphasized the importance of risk-incentive by affirming the reduction of a "contingent-fee" that was negotiated "after judgment was entered," when the claimant "had a 100% chance of success." *Id.* Because there was not even the slightest risk of nonpayment when the agreement was signed, awarding the attorney the full twenty-five percent of past-due benefits would have amounted to a true windfall in *Damron*.

The Commissioner, relying on an incorrect interpretation of *Hayes v. Sec'y of Health & Hum. Servs.*, 923 F.2d 418, 422 (6th Cir. 1990), focuses exclusively on a comparison between the effective hourly rate in this case and Mr. Stanfield's hourly rate in rural divorce cases. Comm'r Br. at 3–4. In *Hayes*, the court of appeals held that,

> [U]nder *Rodriquez*, a windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market.

10

*Hayes*, 923 F.2d at 422 (footnote call numbers omitted). The hypothetical hourly rate in this case is far more than twice the hourly rate in Mr. Stanfield's divorce cases. Yet, the Commissioner's reading of the quoted passage is flawed in two ways. First, as Mr. Stanfield points out, *Hayes* erects a minimum floor under which a district court may not even question the reasonableness of a fee mandated by a contingent-fee agreement, but there is absolutely nothing about *Hayes* that automatically compels a finding of unreasonableness where, as here, the hypothetical hourly rate is admittedly more than twice the typical hourly rate. *See id.* (noting simply that, in such cases, the courts may "consider arguments designed to rebut the presumed reasonableness of the attorney's fee"). Nor does *Hayes* condone the Commissioner's explicit comparison between social security cases and "non-contingent private matters, such as divorce cases." Comm'r Br. at 4. Instead, *Hayes* allows a comparison between the hypothetical hourly rate in the social security case and the "standard rate *for such work* in the *relevant market*." *Hayes*, 923 F.2d at 422 (emphases added). The court agrees with Mr. Stanfield that his work in divorce cases is not "such work," and that the market for domestic relations services is not the "relevant market." Pl.'s Reply at 3–4. Hence, the Commissioner's comparison under the guise of *Hayes* really establishes nothing at all.

Applying all of the foregoing principles leads only to one conclusion: Mr. Stanfield's requested fee will not produce a windfall unless the court focuses the windfall inquiry exclusively on the high hourly rate. Such a narrow focus is precluded by *Gisbrecht*, the law of the Sixth Circuit, and this court. Instead, the court accepts the high hourly fee, while

recognizing that "the attorney will not prevail every time." *Royzer v. Sec'y of Health & Hum Servs.*, 900 F.2d 981, 982 (6th Cir. 1990). When Mr. Stanfield agreed to represent Claimant, the court cannot say that his chances of success were then "so high," or that the "anticipated legal work [was then] so negligible," that an exorbitant fee was then apparent. In fact, the agency disputed Claimant's entitlement in this case for five years after Mr. Stanfield entered the picture. Mr. Stanfield clearly worked harder than the Commissioner is willing to acknowledge, at both the administrative and the judicial levels. When the case reached federal court, Mr. Stanfield submitted an extensive briefing that hardly could be referred to as "boilerplate," and there were numerous "issues of material fact" before the court until Mr. Stanfield persuaded the Commissioner that Claimant was disabled. The contingent-fee agreement in this case thus was truly contingent, and, mainly for that reason, the court finds that the agreement will not yield a "windfall" fee under the cases cited and discussed above.

IV.

Under *Gisbrecht*, the court must review the contingent-fee agreement, if there is one. *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002). Unless the making of the agreement, the terms of the agreement,[3] or the fee yielded thereby are unreasonable, the court must approve the fee. *See generally id.* at 807–809. The sole question before the court here was whether the fee yielded by the unambiguous terms of the agreement was unreasonable under the "windfall" rule. Because the court has answered that question in the negative, the court now

---

[3] For example, if the contingent-fee agreement prescribes a fee of one-half of past-due benefits, that term is unreasonable. In fact, it is criminal. 42 U.S.C. § 406(b)(2).

must find the fee of $26,799.00 a reasonable fee under the circumstances.

For these reasons, the Motion for Approval of Attorney's Fee [Dkt. # 22] is GRANTED.  The Commissioner is directed to forward that amount to Mr. Stanfield out of Claimant's past-due benefits.  Mr. Stanfield is ORDERED to comply with his obligations under the Equal Access to Justice Act, 28 U.S.C. § 2412.

IT IS SO ORDERED.

                                                s/ **James D. Todd**
                                                JAMES D. TODD
                                                UNITED STATES DISTRICT JUDGE